HERVEY H. PATTEN *vs.* WILLIAM N. FIELD.

Penobscot.    Opinion July 15, 1911.

*Trial.    Directing Verdict.    Fraud.    Deceit.*

If the evidence would warrant a jury in returning a verdict for defendant it is error to direct a verdict for plaintiff.

In an action for deceit, it must be shown that the defendant made a false representation as to a material fact, that he knew it was false, or made it as a statement of fact of his own knowledge not knowing whether it was true or false, with the intent that the plaintiff should rely on it, and further that the plaintiff was ignorant of its falsity and acted upon it to his damage.

Whether the elements of actionable deceit exist in an action therefor, are questions of fact to be determined from the evidence and the inferences to be drawn from the facts established.

Where there were facts and circumstances in an action for deceit from which the jury might have reached the conclusion that the plaintiff did not believe and rely upon the alleged misrepresentations, it was error to direct a verdict for the plaintiff.

Where fair-minded and unprejudiced persons might reasonably differ on the conclusions to be drawn from undisputed facts, the question is for the jury.

On exceptions by defendant.    Sustained.

Action on the case for deceit.    Plea, the general issue with special plea as follows: "And now the said defendant, William N. Field, by his attorney, comes and defends, etc., when etc., and says that the said plaintiff, H. H. Patten, ought not to have or maintain his aforesaid action thereof against the said defendant, because the said defendant, William N. Field, avers that after the making of the said supposed promises and undertakings and the accruing of the said several causes of action in the plaintiff's declaration, if any such were made or accrued, a discharge in bankruptcy was granted to him, the said defendant, by the District Court of the United States for the District of Maine.    A certificate of such discharge under seal of the said court granting the same is hereto attached."

At the conclusion of the evidence the presiding Justice ordered a verdict for the plaintiff for $454 and the defendant excepted.

The case is stated in the opinion.

*Martin & Cook*, for plaintiff.

*Fellows & Fellows*, for defendant.

SITTING:   EMERY, C. J., KING, BIRD, HALEY, JJ.

PER CURIAM.   Action on the case for deceit.   In addition to the general issue the defendant pleaded his discharge in bankruptcy proceedings commenced after the time of the alleged deceit.   The case comes up on exceptions to the ruling of the presiding Justice directing a verdict for plaintiff.

It appears that the plaintiff, his partner Mr. Sayles, and the defendant agreed to organize a corporation to purchase a woolen mill property in Uxbridge, Massachusetts.   Mr. Sayles was one of the heirs owning the property and was to put in his interest for stock in the corporation.   $25,000 was to be paid to the other heirs, $1000 on September 1st, 1909, and the balance on September 15, 1909. The plaintiff and defendant were to organize and finance the corporation and each have a block of the stock equal to that of Sayles. The corporation was organized and the plaintiff paid the expenses thereof.   Thereafter the plaintiff and defendant went to New York and made arrangements with certain brokers to undertake the financing of the proposition, to whom it was necessary to pay $54 for advertising.   This amount was for defendant to pay, but not having the money he requested plaintiff to pay it for him, saying: "I am all right.   .   .   I have been holding thirty thousand dollars worth of wool about two years and it has taken every dollar I could get to pay the storage on that wool.   I didn't want to sell on a sacrifice and I will finance the whole proposition in sixty days." The plaintiff paid the $54 for which defendant gave him his check on a Boston bank.   The check was immediately presented but there was no "funds" to pay it, and it has not been paid.

On September 1, 1909, a note of the corporation for $800, on thirty days, was made and signed on the back by the plaintiff,

defendant and Sayles. The proceeds of this note, together with a check for $200 which plaintiff had received from a woman in Maine for the sale of stock, was used to pay the first payment on the property. With respect to the making of this note the plaintiff testified :

"Mr. Field came into the office on the morning of September 1st : 'Now' he says 'We have got to raise that thousand dollars' I says 'Field, can you pay your half?' 'Well' he says, 'There is that two hundred dollar check ; we have got to have eight hundred more to go with it.' I says 'I wouldn't want to use this woman's check if this thing isn't going through all right; because I should feel that I ought to pay the woman back if we used the check.' He commenced to talk and wanted to know if I doubted his financial condition. , I says 'I don't know, I suppose you are all right.' He says 'I am,' and went on to tell his thirty thousand dollar wool story and about the sheep he owned in his own right,— that he practically owned a thousand sheep. He says, 'I am good for the whole amount.' I says, 'Field, I am willing to stand one-half of this ; I will pay four hundred and you pay four hundred and we will turn the check in.' He says 'I can't this morning ; if you will sign a note with me,—that is, have the Woolen Company on it and Sayles name we will take care of it,— I will take care of it myself,' he says, 'and then you ain't losing but one-half any way,' and we took and signed the note."

On October 1st, the plaintiff paid the note, and also sent the woman in Maine the $200 she had sent for stock.

The defendant was not present at the trial, and no evidence was presented in his behalf other than his discharge in bankruptcy. The presiding Justice asked plaintiff's attorney how much he claimed and he replied "For the note, four hundred dollars, and the check, fifty four dollars." Thereupon a verdict for $454 was directed for the plaintiff.

If the evidence in the case would have warranted the jury in returning a verdict for the defendant the exceptions must be sustained ; otherwise, overruled.

To sustain this action there must be clear and decisive proof of each and all the essential elements of actionable deceit; that the defendant made a representation in regard to a material fact; that the representation was false; that he knew it was false, or made it as a statement of fact of his own knowledge not knowing if it was true or false; that it was made with intent that the plaintiff should rely and act upon it; and that the plaintiff was ignorant of its falsity and reasonably believed it to be true, and relied upon it, and acted upon it to his damage. Whether these elements existed in this case were questions of fact determinable from the evidence, and the inferences to be drawn from facts established by the evidence. Had the case been submitted to the jury they would undoubtedly have been justified in finding for the plaintiff if they accepted his evidence and drew their inferences in his favor. But, on the other hand, would not a verdict of a jury in the defendant's favor be sustainable upon the evidence in this case? It may be conceded that a jury would not have been justified in this case in finding that the defendant did not make a false representation of a material fact, knowing it to be false, and with intent that it should be acted upon by the plaintiff, but can it be held that a jury would not have been justified in finding that the plaintiff did not reasonably believe the alleged representations, and did not reply upon them, and was not induced by them to pay the $54, or sign the note, or both? To make the question before us more concrete, assume that a jury had made a special finding that at the time the plaintiff signed the $800 note he did not believe the defendant's wool and sheep story, and was not induced thereby to sign the note, but signed it because he was personally interested to have the $1000 paid and thereby save the option, and expected the note could be paid from sales of stock, would such finding by a jury be sustainable in this case? We are constrained to the conclusion that it would. Patten did not testify that he believed and relied upon Field's representation about the wool and sheep. Why should he have believed and relied upon this representation on Sept. 1st? It was made to him in New York on Aug. 8, when Field gave him his worthless check, representing it to be good, and Patten had held that dishonored check

for nearly a month as a constant reminder that Field was not only financially worthless, but had boldly falsified about the check. In the absence of any statement by Patten that he did believe and rely upon the wool and sheep story, that essential element of the case can only be found as an inference from Patten's act in signing the note. But we do not think that is the only inference that can be properly drawn therefrom. When fair-minded and unprejudiced persons may reasonably differ in the conclusions to be drawn from undisputed facts, the question is one of fact for the jury.

For the reasons stated it is the opinion of the court that the case should have been submitted to the jury.

*Exceptions sustained.*